**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIE THOMAS, on behalf of himself and others similarly situated, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. ________________ |
| JBS SOUDERTON, INC., | : | |
| Defendant. | : | |

## NOTICE OF REMOVAL

Defendant, JBS Souderton, Inc., ("Defendant" or "JBS Souderton") by and through its undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1331 and 1332, from the Court of Common Pleas of Philadelphia, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. As grounds for removal, JBS Souderton states as follows:

## FACTUAL BACKGROUND

1. On or about July 3, 2026, Plaintiff filed a civil action in the Court of Common Pleas of Philadelphia, Pennsylvania, against JBS Souderton under case number 260700490 ("State Court Action"). A copy of the original Complaint is attached hereto as Exhibit A. The original Complaint stated two putative class action claims: (1) alleged violations of the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.101 *et seq.*, and (2) common law unjust enrichment.

2. Plaintiff served JBS Souderton with the original Complaint on July 8, 2026. *See* Exhibit B (Affidavit of Service).

3. On July 28, 2026, the parties filed a stipulation in the State Court Action permitting Plaintiff to file and serve an amended pleading, and for JBS Souderton to have 30 days thereafter to respond to that amended pleading. Exhibit E (Stipulation).

4. Plaintiff filed and served an Amended Complaint on July 29, 2026. The Amended Complaint, which is attached hereto as Exhibit F, states a single putative class action claim for alleged violations of the PMWA.

## COMPLIANCE WITH REMOVAL STATUTE

5. This action is properly removed to this Court because the State Court Action is pending within this district and division. 28 U.S.C. §§ 118, 1441(a), 1446(a).

6. This removal is timely because it is being filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Specifically, Defendant is removing this action within thirty (30) days of being served with the original Complaint on July 8, 2026. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999).

7. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibits A–F are true and correct copies of all processes and pleadings served upon Defendant in the State Court Action to date and filed on the docket of the State Court Action.

8. Pursuant to 28 U.S.C. § 1446(d), with the filing of this Notice of Removal, Defendant is simultaneously: (a) serving Plaintiff with a copy of this Notice of Removal; and (b) filing a copy of the Notice of Removal in the State Court Action.

## GROUNDS FOR REMOVAL

### I. Minimal Diversity under the Class Action Fairness Act

9. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 (CAFA). CAFA confers original federal jurisdiction over putative class actions where: (1) there is minimal diversity; (2) the proposed class contains at least

100 members; and (3) the amount in controversy is at least $5 million in the aggregate. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014).

**A. Minimal diversity exists.**

10. Defendant "owns and operates an approximately 608,000 square-foot beef processing facility located in Souderton, PA (hereafter the 'Facility')." Ex. F at 2–3 (Am. Compl. ¶ 5).

11. Named Plaintiff and proposed class representative Willie Thomas is a citizen of Pennsylvania and a former hourly employee at the Facility. *See* Ex. F at 2 (Am. Compl. ¶¶ 2, 7).

12. A corporation is a "citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

13. Defendant is a corporation organized under the laws of the state of Delaware. Declaration of James Hubler ("Hubler Decl.") ¶ 6. As Plaintiff acknowledges, Defendant's principal place of business is located in Greeley, Colorado. Ex. F at 2 (Am. Compl. ¶ 4); *see also* Hubler Decl. ¶ 8.

14. "The test for ascertaining corporate citizenship is set forth in the Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)." *Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442, 445 (E.D. Pa. 2019). "Under *Hertz*, a corporation is a citizen of both (1) its state of incorporation, and (2) the state where the company keeps its 'nerve center,' i.e., the *sole* location where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Id.*

15. A corporation's "nerve center" is "typically 'found at a corporation's headquarters.'" *Id.* at 450 (quoting *Hertz*, 559 U.S. at 80–81). The nerve center "is a single place,

meaning a corporation's nerve center is *static*, regardless of the conduct at issue in a particular case." *Id.* (internal quotations and citations omitted).

16. Defendant is registered with the Pennsylvania Department of State as a foreign corporation. Hubler Decl. ¶ 6. Defendant's principal place of business is in Greeley, Colorado. *Id.* ¶ 8.

17. All of Defendant's officers work at Defendant's corporate headquarters in Colorado. *Id.* ¶ 10. Defendant's board of directors is based primarily in Colorado, as well. *Id.* ¶ 11. None of Defendant's officers or directors reside or work in Pennsylvania. *See id.* ¶¶ 10, 12.

18. Defendant's officers and directors exercise corporate control and decision-making for Defendant from Defendant's Colorado headquarters. *See id.* ¶ 13. These corporate oversight activities include conducting board meetings, establishing corporate policies, and exercising corporate direction and control over Defendant's operations. *Id.* ¶¶ 13–16. Defendant's corporate officers and directors have not delegated corporate direction, control, or policy-setting authority to anyone working in Pennsylvania. *Id.* ¶ 16.

19. For diversity purposes, Defendant is a citizen of Delaware and Colorado.

20. The CAFA "local controversy" exceptions from federal court jurisdiction found at 28 U.S.C. §§ 1332(d)(3) (discretionary) and (d)(4) (mandatory) do not apply because, inter alia, Defendant is not a citizen of Pennsylvania, the state where the action was originally filed. See 28 U.S.C. § 1332(d)(3); 28 U.S.C. §§ 1332(d)(4)(A)(i)(II)(cc), 1332(d)(4)(B).

21. Because Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Delaware and Colorado, minimal diversity is established.

**B. The proposed class contains well over 100 members.**

22. Plaintiff purports to bring this action on behalf of "[a]ll individuals employed by Defendant who work at the Facility and are paid an hourly wage." Ex. F at 3 (Am. Compl. ¶ 6). He alleges "[t]he class includes more than 1,000 individuals." *Id.* ¶ 15.

23. Plaintiff correctly alleges that there are over 1,400 individuals currently employed at the Facility. *Id.* at 2–3 (Am. Compl. ¶ 5 n.1); *see also* Hubler Decl. ¶ 18. Most of these individuals are paid by the hour rather than on a salary basis. Hubler Decl. ¶ 19.

24. Based on these allegations, the Court can properly infer that the putative class consists of more than 100 members, satisfying the CAFA requirement that the putative class consist of more than 100 members. 28 U.S.C. § 1332(d)(5)(B).

**C. The aggregate amount in controversy exceeds $5 million.**

25. Plaintiff seeks to pursue this action for alleged unpaid wages on behalf of all hourly employees who have worked at the Facility at any time from July 3, 2020, to the present. Ex. F at 3 (Am. Compl. ¶ 6.)

26. In addition to over 1,000 current hourly employes, Defendant has thousands more former hourly employees from July 3, 2020, to the present. Hubler Decl. ¶¶ 18–20.

27. Plaintiff alleges that he and the other class members "generally worked a minimum of 40 hours per week . . . at the Facility during the class period." Ex. F at 3 (Am. Compl. ¶ 8).

28. In support of his putative class claim for unpaid wages arising under the PMWA, Plaintiff alleges generally that "Defendant, as a matter of policy, has failed to pay Plaintiff and other class members for all compensable "hours worked" at the Facility as required by the PMWA." *Id.* ¶ 9.

29. As examples, Plaintiff claims,

> [At] the beginning of the daily scheduled shift, Defendant has required class members to, among other things, walk long distances from the entrances of the Facility to locker rooms and their assigned work locations as well as gather and don their mandated personal protective equipment ("PP”"). Class members do not receive any compensation for the time associated with these activities prior to the start of their scheduled shifts. Such activities are mandatory and occur on the premises of the Facility.

*Id.* ¶ 10.

30. For the end of the workday, Plaintiff similarly alleges,

> [A]t the end of the daily schedule shift, Defendant has required Plaintiff and other class members to, among other things, doff and return their mandated PPE and walk long distances from their assigned work locations to the locker rooms and the exits of the Facility. Plaintiff and other class members do not receive any compensation for the time associated with these activities. Such activities are mandatory and occur on the premises of the Facility.

*Id.* ¶ 11.

31. Plaintiff does not specify any approximation of the amount of unpaid time he is claiming that he and the other class members are owed. Nevertheless, it is obvious from the face of his Amended Complaint that the aggregate amount in controversy exceeds $5 million.

32. Plaintiff’s final rate of pay during his employment at Defendant’s Souderton Facility was $23.00 per hour. Hubler Decl. ¶ 22.

33. Based on his allegation that he generally worked 40 or more hours per week, Plaintiff is likely to allege all of is unpaid time is owed at 1.5 times his regular rate as overtime, or $34.50 per hour.

34. If Plaintiff claims he performed a total of ten minutes of work for which he was not paid before and after the start of his shift each work day, he will be claiming 50 minutes, or .8333333 hours of overtime per work week. This would amount to a weekly claim of unpaid wages of $28.75.

35. Assuming Defendant employed at least 1,000 hourly workers throughout the entire class period, the aggregate weekly claim for a class of 1,000 members would equal $28,750.

36. There are over 300 workweeks in Plaintiff's proposed class period of July 3, 2020, to the present.

37. The aggregate unpaid wage claim for a putative class of 1,000 at Plaintiff's representative hourly rate would exceed $8,625,000 from July 3, 2020 to the present. [$28.75/week x 1,000 class members x 300 work weeks = $8,625,000].

38. In sum, this court has original jurisdiction under the CAFA because minimal diversity exists between the putative class and Defendant, there are more than 100 proposed class members, and the aggregate amount in controversy exceeds $5 million.

## II. Alternative Removal Grounds: Federal Question Jurisdiction based on Complete Preemption

39. Further and in the alternative to jurisdiction under CAFA, this action is removable under 28 U.S.C. § 1441(a) because it is a civil action for which this Court has original jurisdiction under 28 U.S.C. § 1331.

40. Although the Amended Complaint purports to assert a single count under the PMWA, Plaintiff's claim is completely preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and therefore arises under federal law.

41. Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). The preemptive force of Section 301 is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).

42. Section 301 completely preempts, and thus renders removable, not only those state-law claims founded directly on rights created by a collective bargaining agreement, but also those state-law claims that are "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 394. Once a state-law claim falls within the scope of Section 301, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393.

43. Plaintiff and most of the putative class have been, at all relevant times, employees covered by collective bargaining agreements ("CBAs") and a letter of understanding ("LOU") in effect between Defendant and UFCW Local 1776.

44. Resolution of Plaintiff's claim is substantially dependent upon, and inextricably intertwined with, interpretations of the CBAs and LOU. The CBAs and LOU implicated by Plaintiff's claim do not leave the compensability of time spent donning, doffing, walking, and washing, among other activities, to background state law. Instead, the CBAs and LOU affirmatively address when and how such activities will be compensated.

45. Adjudicating whether the activities for which Plaintiff seeks additional compensation under the PMWA are compensable and whether they have not yet been paid for by Defendant will require the Court to interpret and apply the CBAs and LOU. The Court cannot determine whether, and to what extent, any of the claimed activities remain unpaid and constitute "hours worked" without construing provisions of the CBAs and LOU.

46. Because resolution of Plaintiff's claim requires interpretation of the CBAs and LOU, the claim is "substantially dependent on analysis of" the CBAs and LOU, completely preempted by Section 301 of the LMRA, and therefore arises under federal law. *See Caterpillar*, 482 U.S. at 394.

47. Thus, this action is removable independently of and in alternative to jurisdiction under CAFA pursuant to 28 U.S.C. §§ 1331 and 1441(a).

**III. Defendant's Disclaimer / Reservation of Rights**

48. In alleging the amount in controversy for purposes of removal, Defendant does not concede in any way that (1) the allegations in the Amended Complaint are true, (2) Defendant failed to pay Plaintiff and other putative class members for hours worked; (3) Plaintiff and/or any putative class members are owed unpaid wages or any other damages under the PMA; (4) Defendant committed any wrongful acts as alleged in the Amended Complaint, (6) Plaintiff has asserted claims upon which relief can be granted, or (7) Plaintiff and/or any putative class members are entitled to damages or injunctive relief.

**CONCLUSION**

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, the above-entitled action is hereby removed from the Court of Common Pleas of Philadelphia, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

**MacMAIN LEINHAUSER PC**

Dated: August 7, 2026

*/s/ Brian H. Leinhauser*
Brian H. Leinhauser
PA Attorney I.D. No. 203945
Laurie Ann Fiore
PA Attorney I.D. No. 81373
433 W. Market Street, Suite 200
West Chester, PA 19382
bleinhauser@macmainlaw.com
lfiore@macmainlaw.com
Telephone: 484-318-7106
Facsimile: 484-328-3996

SPENCER FANE LLP

Randi J. Winter (MN 0391354)
Matthew E. Cavanaugh (MN 402969)
*Pro Hac Vice Applications Forthcoming*
100 South 5th Street, Suite 2500
Minneapolis, MN 55402
rwinter@spencerfane.com
mcavanaugh@spencerfane.com
Telephone: (612) 268-7000

*Attorneys for Defendant JBS Souderton, Inc.*